CHERRY v. WEBB.

4-5094

Opinion delivered April 18, 1938.

S. L. Richardson, for appellant.

Smith & Judkins and J. H. Townsend, for appellee.

GRIFFIN SMITH, C. J. This suit questions the right of C. W. Webb to hold the office of county and probate

judge, to which he was elected by the voters of Lawrence county.

In 1931 and 1932 Webb was tax collector for Lawrence county. In his settlement with the auditor of state September 1, 1932, the amount shown to have been due was $45,978.61. In consequence of the settlement Webb issued his official checks, payable to the state treasurer. The complaint alleges that beginning January 1, 1931, and until January 1, 1933, appellee collected more than $40,000 in money due Lawrence county and the state of Arkansas, and with the exception of about $5,000 has failed to account for and pay over said money to the state of Arkansas, and that he is a defaulter within the meaning of art. 5, § 8, of the Constitution of Arkansas. It is further alleged that, being ineligible to hold office, appellee is a usurper, wrongfully drawing a salary of $3,600 per year.

In 1936 appellant was the republican candidate for county and probate judge in opposition to appellee, receiving 482 votes. Appellee's vote was 2,217. In his original complaint appellant prayed that appellee be declared ineligible to hold the office, and that appellant be declared the duly elected official. An amendment to the complaint is: "Plaintiff withdraws and abandons those allegations of his complaint wherein he prays that, if defendant is adjudged ineligible to hold said office, that plaintiff be declared the duly elected county judge and that he have judgment against the defendant for all the emoluments of said office drawn by defendant since January 1, 1937. Plaintiff prays that defendant be ousted from said office and that he be declared ineligible to hold said office or any office of trust until he shall have paid over all moneys for which he may have been liable as such alleged tax collector."

Appellee, in his answer, admitted the original obligation and issuance of checks payable to the state treasurer, but says that such checks were drawn against funds deposited in the Bank of Hoxie; that at the time in question he had on deposit in said bank funds in excess of the amounts for which the checks were drawn, and "This

defendant, as such tax collector, had and kept in such bank, and in its successor, Twin City Bank of Walnut Ridge, at all times after the issuance and delivery of such checks [funds sufficient to meet them], but said state treasurer, through no procurement, design or fault of this defendant, neglected and failed to present to said Bank of Hoxie for payment one of said checks, being in the sum of $40,000, promptly in due course, but negligently held the same without presentation for more than two months. If said check for $40,000 had been presented by the state treasurer for payment in the usual course of business, said deposit against which the same was drawn was in an amount sufficient to pay same. At no time thereafter was any notice given by said treasurer or any holder of said check of the dishonor thereof.''

The answer sets up, as further defense, that the Bank of Hoxie, while the collector's deposit was intact, was taken over by the Twin City Bank of Walnut Ridge, and in February, 1933, the Twin City Bank failed while the check was still in the hands of the state treasurer.

Civil suit to collect the indebtedness was instituted on behalf of the state by the attorney general. September 13, 1935, such suit was dismissed by agreement with prejudice to the plaintiff. The order of dismissal was approved by Chas. B. Thweatt and Edward Bennett, special counsel for the state; Fred M. Pickens, attorney for the defendant Webb, and Buzbee, Harrison, Buzbee & Wright, attorneys for Consolidated Indemnity & Insurance Company, and the Ohio Casualty Insurance Company.

Evidence on behalf of appellee shows that the settlement was effectuated through payment by the insurance companies of $12,000. It is appellant's contention that the balance of $28,000 is a valid outstanding obligation within the meaning of the pertinent constitutional provision, which is:

"No person who now is or shall be hereafter a collector or holder of public money, nor any assistant or deputy of such holder or collector of public money, shall be eligible to a seat in either house of the general as-

sembly, nor to any office of trust or profit, until he shall have accounted for and paid over all sums for which he may have been liable." Const., Art. 5, § 8.

We are of the opinion that appellant did not have the right to prosecute this suit in his own name.

Chapter 164 of Pope's Digest, entitled "Usurpation of Office," provides: "In lieu of the writ of *scire facias* and *quo warranto,* or of an information in the nature of a *quo warranto,* actions by proceedings at law may be brought to vacate or repeal charters, and prevent the usurpation of an office or franchise [§ 14325]. Whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the state or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise [§ 14326]. It shall be the duty of the prosecuting attorneys to institute the actions mentioned in this chapter against all persons who have or shall usurp county offices or franchises, where there is no other person entitled thereto, or the person entitled fails to institute the same for three months after the usurpation [§ 14327]. For usurpation of other than county offices or franchises, the action by the state shall be instituted and prosecuted by the attorney general [§ 14328]. A person who continues to exercise an office after having committed an act, or omitted to do an act, the commission or omission of which, by law, created a forfeiture of his office, shall be subject to be proceeded against for a usurpation thereof [§ 14329]."

*Vanhoose* v. *McGregor,* 172 Ark. 1012, 291 S. W. 422, was a case involving the action of a private citizen to oust the appellee from the office of sheriff and collector of Woodruff county on grounds which it was contended were sufficient, if established, to sustain the complaint. Although the trial court found against appellants on questions of fact, this court in affirming the judgment said:

"This action was brought under chapter 178 of Crawford & Moses' Digest [now chapter 164 of Pope's

Digest], which provides against the usurpation of office. The statute does not confer authority upon private citizens to bring the suit. The only proper parties to the suit to oust one who has usurped a county office are the defeated candidate and the prosecuting attorney."

Appellant, in the instant case, construes the term "defeated candidate" to mean that one who has participated as a candidate in an election and has failed for want of sufficient votes, is, nevertheless, a "defeated candidate" within the meaning of the paragraph quoted from the Vanhoose case. This meaning was not intended. Section 14326 of Pope's Digest authorizes "an action by proceedings at law . . . either by the state or the party entitled to the office," but it does not, nor do any of the sections in the chapter, authorize a defeated candidate to contest the election in this manner, or to institute ouster proceedings, unless such candidate is able to show that he or she is entitled to the office. One of the latest cases holding that a candidate who fails to receive a majority of the legal votes cast is not entitled to claim the office merely because the candidate receiving the greater number of votes is ineligible, is *Tompkins* v. *Cross,* 194 Ark. 75, 105 S. W. 2d 540.

In *Ramsey* v. *Carhart,* 27 Ark. 12, it was said: "The only question presented by this case is whether a *quo warranto* will issue on the relation of a private person. It was held in *State* v. *Ashley,* 1 Ark. 279, in *Caldwell* v. *Bell and Graham,* 6 Ark. 227, and in *State* v. *Williams,* that the writ of *quo warranto* would only issue on the relation of the attorney general, in the name of the state, in cases where the whole community are interested, and would not be granted at the instance of an individual for the determination of a private right."

In *State* v. *McDiarmid,* 27 Ark. 176, the court said: "The issue, in *quo warranto,* is not between the parties who may be contesting for an office, but between the state and the party holding, or in possession."

Ruling Case Law, vol. 22, p. 688, says: "The primary function of the proceedings [in *quo warranto*] is to afford a means by which the government may protect

itself against usurpation of governmental rights by an individual."

If, in the instant case, appellee should be declared ineligible, no other person would be entitled to the office. It follows, therefore, that the action was one which the statute directs may be brought only by the prosecuting attorney, by a proceeding in the nature of *quo warranto.*

The judgment is affirmed.